## FIKE v GOODYEAR TIRE & RUBBER CO

Ohio Appeals, 9th Dist, Summit Co

No 2788. Decided Jan 22, 1937

Smoyer, Kennedy, Smoyer & Vogel, Akron for appellee.

Foust & Holden, Akron, and R. H. Nesbitt, Akron, for appellant.

## OPINION

By STEVENS, J.

This cause is before this court on appeal on questions of law. Reference will be made to the parties by the titles which they bore in the trial court.

For some time prior to January 8, 1935, plaintiff had been continuously employed by the defendant, and for a very short time before his injury on January 8, 1935, he had occupied the position of lobby attendant in the main lobby of defendant's main office building. His duties as such attendant were performed at a desk in the main lobby and not elsewhere in defendant's factory. His hours of employment began at 7 o'clock in the morning of each day, and he was paid upon an hourly basis. The entrance to defendant's buildings where plaintiff entered was what is known as the "Goodyear Avenue Gate," which gate was approximately south of the intersection of Goodyear Avenue and East Market Street.

For a number of years prior to the events herein mentioned, plaintiff had resided on Third Avenue, a street extending in an easterly direction from Arlington Street, which street was located southerly from the plant of the defendant company, and extended in an approximately east and west direction, parallel to but south of East Market Street.

To reach his place of entrance to defendant's plant, plaintiff could walk easterly upon Third Avenue to the intersection of Second Street and Fuller Avenue, thence in a northwesterly direction along Kelly Avenue to East Market Street, and thence westerly on East Market Street to the main gate of the Goodyear plant, or he could enter the plant at the same gate by walking westerly from his residence on Third Avenue to Arlington Street, thence northerly on Case Avenue to East Market Street, and east thereon to the main gate. This latter route, however, was considerably longer than the former. There were also other places of entrance to said plant. No instructions as to the route or manner by which he should arrive at his place of employment were given to plaintiff, nor was he furnished with any transportation by the defendant to take him to and from his work.

At 6:25 on the morning in question—Jan-

uary 8, 1937—the plaintiff left his home on foot to report for work in the main lobby of the defendant company's plant, where he was required to enter upon the performance of his duties at 7 o'clock. He proceeded to the corner of Second Street and Fuller Avenue, walked along the northerly side of Second Street to Kelly Avenue, turned left on the westerly side of Kelly Avenue, and left again on the southerly sidewalk of East Market Street, proceeding in a westerly direction upon said southerly side of said East Market Street until he had reached a point immediately northerly and part way across the vehicular entrance to defendant company's plant known as the "East Gate," at which point and while still on the sidewalk of the public highway, plaintiff was struck by a tractor belonging to the defendant company, which tractor was being driven by one of the company's employees through said gate, knocked to the ground and seriously injured.

The defendant company owns property upon the southerly, as well as the northerly, side of East Market Street; that upon the southerly side of said street extending from Case Avenue on the west to Kelly Avenue on the east, a distance of approximately 2500 feet, there being no intersecting streets running in a southerly direction from East Market Street between the limits of Case Avenue and Kelly Avenue.

On the northerly side of East Market Street is located a building known as the "Goodyear Recreation Hall," in which building are an auditorium, retail employees' stores, a bank, and some mercantile establishments; easterly therefrom is located a parking ground, which is used as a parking place for employees' cars. This latter property all lies to the east of the intersection of Goodyear Avenue and East Market Street.

Between 300 and 400 feet easterly from the Goodyear Avenue gate is located said "East Gate," where plaintiff was injured; said gate being a vehicular entrance to defendant's premises, and being approximately 20 feet in width. This gate is used by the defendant company as one of the means of ingress and egress to the loading platform located on the northerly side of defendant's factory building, from which platform is loaded merchandise to be carried by defendant's motor vehicles upon the public highways in inter-plant transportation, some going to plant No. 2, a distance of approximately one-half mile, and some going to plant No. 3, a distance of approxi-

mately three-fourths of a mile, from plant No. 1; but said East Gate is not an employees' entrance.

The traffic through this East Gate, so-called, by trucks and tractors and trailers, is very heavy; there being a tremendous volume of merchandise carried through said gate, all in the usual conduct of defendant's business.

East Market Street, at the situs of the East Gate, is 85 feet wide between property lines, the paved portion of said street being 66 feet in width between curbs, and the sidewalk along the southerly side of said street being 10 feet in width. Said East Market Street is one of the main east-and-west traffic arteries through the city of Akron, extending from the westerly to the easterly limits of said city, and is a main highway for traffic bound from Akron to Canton. It is also a state route numbered highway.

The evidence shows that at the intersection of Goodyear Avenue and East Market Street a traffic light has been erected by the city of Akron, and at a point 150 feet east thereof another traffic light has been erected by the city of Akron, both of which lights may be manually controlled from the premises of the defendant company; this under and by virtue of an arrangement with the city of Akron, and the purpose of such control being to expedite the movement of vehicular and pedestrian traffic along and across said thoroughfare.

The evidence further discloses that at times of traffic congestion, employees of the police department of the defendant company, who are also either deputy sheriffs or special police officers of the city of Akron, are stationed in said street to aid in facilitating the movement of traffic thereon.

The defendant company at the time in question was a self-insurer under the provisions of the Workmen's Compensation law.

Upon submission of the case to the jury, a verdict was returned in favor of the plaintiff and against the defendant for the sum of $24,500, upon which verdict judgment was thereafter entered. The defendant (appellant) has appealed to this court, assigning 12 specifications of error. The brief of appellant, however, discusses but four of those assignments of error, which are as follows:

"1. The injuries complained of occurred under circumstances within the scope of

the Workmen's Compensation Act, and recovery therefor cannot be had at law for damages.

"2. The defendant below had the right to have the question as to whether the injuries were compensable under the Workmen's Compensation Act or recoverable at law as damages tried and determined by the court before being required to defend before a jury, and was materially prejudiced by the requirement of the trial court that evidence bearing upon this issue be taken before the jury.

"3. The recovery was too large, showing the influence of passion and prejudice.

"4. The verdict was irregular and void, the amount thereof having been determined by quotient agreement and chance."

These assignments of error will be considered in the order of their enumeration.

The Workmen's Compensation Act of Ohio came into being in 1912, and, as amended in 1925, §35 of Art. II of the Constitution of Ohio reads in part as follows:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workman's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * *"

It is, of course, the contention of the defendant that plaintiff, at the time and place of his injury, was an employee of the defendant company, acting in the course of his employment, and that accordingly his remedy is a recovery under and by virtue of the provisions of the Workmen's Compensation Act, and that he is therefore barred of a right to prosecute his action at law for damages.

Counsel for both appellee and appellant have exhaustively briefed the law covering all of the phases of this case, and we shall endeavor to briefly collate the Ohio authorities which we believe to be decisive of the questions here presented.

In Fassig v State ex, 95 Oh St 232, the Supreme Court stated in syllabus 5 the following:

"5. The provisions in §35, Article II of the Constitution, and in the statute with reference to an injury received in the course of employment refer only to an injury which is the result of or arises out of the employment. Such provisions do not cover any injury which has its cause outside of and disconnected with the employment, although the employe may at the time have been engaged in the work of his employer in the usual way."

In Industrial Comm. v Weygandt, 102 Oh St 1, syllabus 2, the Supreme Court of Ohio said:

"2. The test of right to award from the insurance fund under the Workmen's Compensation Law, for injury in the course of employment, is not whether there was any fault or neglect on the part of the employer, or his employes, but whether the employment had some causal connection with the injury, either through its activities, its conditions or its environments."

This requisite of causal connection between the employment and the injury has been carried through all of the subsequently decided cases without exception, and the wording of the above syllabus has been reiterated, and reincorporated in syllabi, by the Supreme Court of Ohio, in numerous cases later decided.

Conrad, Admrx. v Y. & O. Coal Co., 107 Oh St 387, syllabus 1, states:

"1. The Ohio Workmen's Compensation act does not apply to employes who may be injured after the termination of their daily employment, nor when, at the time of the injury, the relationship of employer and employe has ceased to subsist. * * *"

In Industrial Comm. v Barber, 117 Oh St 373, syllabi 1 and 2, a new element was injected into the consideration of the meaning of the term "course of employment":

"1. An employe, who for the purpose of reaching his place of employment travels a course which affords the only unobstructed access thereto, enters upon the course of his employment within the contemplation of the Workmen's Compensation Law when he reaches the zone of such employment that is under the control of his employer, even though such zone be outside the inclosure of his employer.

"2. The hazards of such zone growing out of the conditions and environments of his employment are hazards of his employment, and an injury received by an employe due to such hazards is compensable out of the Industrial Insurance fund of the Workmen's Compensation Law."

It must, of course, be apparent that whether or not the employee is within the employer's zone of control at the time of the injury, and may by reason thereof be claimed to be within the course of his employment, is dependent upon the facts and circumstances of each individual case. If there is no dispute in the facts and the reasonable inferences to be drawn therefrom, there is presented a question of law for determination by the court.

Great reliance is placed by the defendant upon the Barber case, supra, in urging that this plaintiff, at the time of his injury, was within the zone of control of the defendant company, and hence within the course of his employment.

The record herein fails to convince this court that East Market Street, under the circumstances attendant at the time in question, was within the zone of control of the defendant company, as █ that term was used in said Barber case, supra. That portion of the street where plaintiff was injured was a part of the public thoroughfare. Plaintiff's employment had a fixed situs where his duties were performed. It was neither time nor had plaintiff reached the place where he could enter defendant's premises to perform the duties allocated to him. The environment, hazards, and conditions encountered by plaintiff as he walked along said public highway were not different or greater than were those of any other pedestrian walking thereon at the same time and place, and further, at the time of plaintiff's injuries, he was from 300 to 500 feet away from the situs of his employment.

Moreover, it was not a necessary incident of plaintiff's employment that he use said sidewalk in going from his home to his place of employment. It was optional with him, as it was with the pedestrian public using said street, whether he would or would not pass said gate upon the sidewalk adjacent thereto, where he knew there were hazardous conditions and environments, which he, in common with the public, must encounter.

In the words of Kinkade, J., in **Industrial Comm. v Heil, 123 Oh St 604**, at p. 607: "We are quite unable to see any substantial merit in the proposition that an employe whose duties have a fixed situs can be in the discharge of those duties when he is a mile away, traveling upon a public highway for the purpose of reaching his place of employment."

The record herein does not disclose facts and circumstances which this court believes would warrant it in holding that the sidewalk adjacent to the premises of the defendant upon the southerly side of East Market Street was within the zone of control of the defendant company. We should indeed be loath to hold that ·any private corporation might extend its zone of control so as to include therein part █ or all of a main traffic artery, extensively used and maintained by the public solely at the public expense, and for the public benefit. Certainly, we believe no such conclusion is warranted in this case.

We are accordingly of the opinion that at the time of the injury in question the plaintiff was not in the employ of the defendant company, nor was he acting in the course of his employment; and the facts, and the reasonable inferences to be drawn therefrom, not being in dispute, the trial court therefore did not err in holding, as a matter of law, that plaintiff was not at said time an employee of defendant, acting in the course of his employment.

In this connection, the cases of **Industrial Comm. v Baker, 127 Oh St 345, Industrial Comm. v Gintert, 128 Oh St 129, and Gregory v Industrial Comm., 129 Oh St 363**, are of interest and shed some light upon the question under consideration.

With reference to the second assignment of error urged by the defendant, it will be observed that the answer filed by the defendant set up, as a matter of defense, the claim that plaintiff, at the time of his injury, was an employee of the defendant company in the course of his employment, and that there was a causal connection between said claimed injury and said employment of plaintiff.

Inasmuch as the answer admitted that plaintiff suffered injury by reason of the operation of the tractor of the defendant company, while said tractor was being operated by an employee of the defendant company within the scope of his employment, the allegation in the answer that said plaintiff at said time was an employee acting within the course of his employment, was strictly matter of defense in the nature of a confession of injury, and attempted avoidance of liability in this action upon the claim that plaintiff was required by law to seek his remedy under the provisions of the Workmen's Compensation Act.

Before any evidence was introduced— even before the impaneling of the jury— defendant suggested to the court that its

defense that plaintiff was injured under such circumstances as entitled him to compensation under the Workmen's Compensation Act, should be heard and decided by the court in the absence of the jury, and stated to the court that the evidence upon that issue would be undisputed and would raise only a question of law. That request was denied, and, at the close of plaintiff's evidence and again at the close of all of the evidence, defendant requested the court to decide that question of law in its favor, and the plaintiff also requested the court, at the close of all the evidence, to decide that question in his favor; and, there being no substantial conflict in the evidence in reference to said question, the court decided that issue in favor of the plaintiff; to all of which rulings the defendant duly excepted.

We find no impelling authority which leads us to the conclusion that it was incumbent upon the trial court to first dispose of this matter of defense in the absence of the jury, before proceeding to trial of the question of the negligence of defendant. After all, the rules regulating the order in which issues shall be presented are universally regarded as elastic, and the court is vested with discretion in determining the order in which the several issues shall be presented. 39 **O. Jur., "Trial,"** §68, at p. 641.

We find no abuse of discretion on the part of the trial court in requiring the issues of said case to be presented in the order in which they were presented, and accordingly we conclude that no prejudicial error intervened by reason of the court's ruling in that connection.

With reference to the claim that the recovery was too large, showing the influence of passion or prejudice, we have carefully read the entire record in this case and we find a sharp conflict in the expert testimony as to the nature, extent, and probable permanency of the injuries sustained by plaintiff, and as to the amount of resulting disability therefrom.

If the nature and extent of plaintiff's injuries were as related by the experts who testified for plaintiff, and the probable permanency of plaintiff's disability was such as was indicated by said experts, the amount of the verdict, while large, of itself is not sufficient to convince this court that said verdict was rendered under the influence of passion or prejudice, and there are

no other circumstances shown by the record indicating the influence of passion or prejudice upon the jury in its determination of the issues in the case.

In the situation here presented it was, of course, the province of the jury to determine whether plaintiff's evidence was entitled to the greater weight and consideration, or whether the evidence of the defendant, with reference to the nature and extent of plaintiff's injuries and disability, was to be given the greater weight, and it was incumbent upon the jury to conform its finding to the conclusion which it reached in that respect if the other issues were resolved in favor of plaintiff. Obviously, the jury believed the experts who testified in favor of the plaintiff, and disbelieved, or attached little weight, to the testimony of the experts for the defendant; and, from our reading of the record herein, we find ourselves unable to unanimously agree that the jury's determination of that question was manifestly against the weight of the evidence.

We come now to a consideration of the verdict, and of the question as to whether or not the verdict was irregular, and was in fact a quotient verdict.

In the presentation and determination of that question, counsel for both parties, as well as the trial court, had clearly in mind the rule governing quotient verdicts, and also a clear understanding of what constituted a quotient verdict.

The record discloses that, after the return of the verdict, counsel for defendant went into the room used by the jury during its deliberations and there discovered certain fragments of paper, which, when pieced together, made up defendant's exhibit "A" upon the hearing on the motion for a new trial. That paper contained 11 sets of figures which, when totaled, aggregated 294,000, and that total was divided by 12, with the resultant quotient of 24,500. Twenty-four thousand, five hundred dollars was the amount of the verdict returned in favor of the plaintiff.

Upon the claim that said exhibit plus certain other papers contained in defendant's exhibit "B" constituted evidence aliunde, defendant offered the affidavits of Messrs. Foust and Holden as to the discovery of exhibits A and B, and also an unsigned affidavit of juror Crooks, relating to the manner in which the verdict in this case was reached and returned.

Objection was made by counsel for the plaintiff to the admission of any of this evidence, which objection the trial court

overruled as to exhibits A and B and the affidavits of Messrs. Foust and Holden, and sustained as to the unsigned affidavit of juror Crooks. Thereafter, however, said objection was withdrawn by counsel for plaintiff and a full inquiry into the conduct and deliberations of the jury was had.

Testimony was taken from all of the jurors in said case, except the foreman of said 'jury, who at said time was in Florida, and, after all of said evidence had been heard by the trial court, the court concluded that the verdict returned was not a quotient verdict; and it accordingly overruled defendant's motion for a new trial and entered judgment upon the verdict.

The evidence of said jurors, to our minds, conclusively demonstrates that the verdict in question was not a quotient verdict, there having been no antecedent agreement upon the part of the jurors that they would be bound by the quotient obtained through the addition of all of the amounts voted by the several jurors, and the dividing of said total by 12.

The evidence clearly discloses that 11 of the jurors did agree that the amounts voted by them should be placed upon paper and totaled; the 12th juror voted for the defendant, and accordingly voted no amount; and it was further agreed that said total so obtained should be divided by 12.

We believe the conclusion to be fully warranted that, the jurors understood before the totaling of said several amounts, and the division thereof, that the jury was not to be bound by the quotient so obtained, and the evidence clearly shows that after said quotient had been so obtained, the jurors further considered the question, balloted secretly upon the adoption or non-adoption of said amount as their verdict, and, 10 of said jurors agreeing that said amount was satisfactory to them and expressed what in their opinion was a fair recovery for the plaintiff, said sum was inserted in the verdict, which was then signed by 10 members of the jury and returned into court.

One of the jurors who voted one of the amounts entering into said total did not agree to or sign the verdict that was returned, and 10 of the 11 jurors who testified, including one who did not sign the verdict, testified that there was no such antecedent agreement as would constitute this verdict a quotient verdict.

It appears, from the evidence of some of the jurors, that the jury was cautioned by the foreman of the jury that it would not be bound by any quotient obtained through following the procedure above outlined. We think there is a complete failure of proof to establish an antecedent agreement upon the part of the jury to be bound by the quotient obtained; and its conduct, after the obtainance of said quotient, indicates a consideration of the amount so obtained, a secret ballot thereon, and ▇▇▇▇▇ ▇ an approval of that amount.

Such conduct is not in accord with our understanding of the manner in which a quotient verdict is obtained.

We are of the opinion that the conduct of the jury in arriving at its verdict, while not to be recommended, does not come within the prescription of the rule governing the rendition of quotient verdicts, and we therefore conclude that the trial court did not err in overruling defendant's motion for a new trial predicated upon defendant's claim that the verdict returned was a quotient verdict.

As to the other errors assigned, but not urged in brief or argument, we find no prejudicial error.

The judgment of the trial court will be affirmed.

FUNK, PJ, and WASHBURN, J, concur in judgment.